IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Donald Wilkins, | ) | C/A No.: 1:12-3352-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a
Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a)
(D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to
obtain judicial review of the final decision of the Commissioner of Social Security
("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI"). The two issues before the court are whether the
Commissioner's findings of fact are supported by substantial evidence and whether she
applied the proper legal standards. For the reasons that follow, the undersigned
recommends that the Commissioner's decision be reversed and remanded for further
proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February
14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the defendant in this lawsuit.

I.     Relevant Background

A.     Procedural History

On February 19, 2008, Plaintiff filed applications for DIB and SSI in which he alleged his disability began on November 7, 2007. Tr. at 191–93, 199–205. His applications were denied initially and upon reconsideration. Tr. at 80–86. On October 5, 2009, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Gregory M. Wilson. Tr. at 59–79. On September 16, 2010, the Appeals Council remanded the case to the ALJ for further review. Tr. at 111–12. The ALJ held a second hearing on February 15, 2011. Tr. at 38–58. The ALJ issued a second unfavorable decision on March 18, 2011, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 17–32. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on November 26, 2012. [Entry #1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 52 years old at the time of the second hearing. Tr. at 191. He completed the tenth grade. Tr. at 65. His past relevant work ("PRW") was as a carpenter's helper. Tr. at 55. He alleges he has been unable to work since November 7, 2007. Tr. at 191.

2

2. Medical History

a. Left knee injury

On October 18, 2006, Plaintiff presented at the hospital after falling down a hill and breaking his left knee. Tr. at 499. Doctors diagnosed a tibial plateau fracture. *Id.* Plaintiff was scheduled for an open reduction and internal fixation with bone grafting of his left knee. *Id.* On February 7, 2007, an x-ray of Plaintiff's left knee showed that the fracture had healed, with the help of a metallic plate and screws. Tr. at 495.

On August 31, 2009, Plaintiff underwent a consultative examination with Glenn L. Scott, M.D. Tr. at 513. Plaintiff complained of ongoing pain in his left knee and difficulty with sustained ambulation. *Id.* He stated that his operating physician instructed him not to squat, kneel, climb, or do unnecessary walking. *Id.* He reported intermittent swelling after walking for more than a few minutes and estimated a walking tolerance of two hundred yards. *Id.* Dr. Scott reported that Plaintiff walked without external support and had a slightly shortened stance on his left side. *Id.* On examination, Plaintiff had a healed surgical incision with tenderness along the lateral joint line and some synovial thickening. *Id.* Plaintiff also had some tenderness over the tibial plateau distal to the lateral joint line. *Id.* X-rays showed some persistent depression with irregularity and sclerosis of the joint surface and a retained plate and screw at the fracture site. *Id.* Dr. Scott's impression was posttraumatic arthritis of the left knee. Tr. at 514. Dr. Scott stated, "I feel this individual would be limited to a sedentary type work activity primarily because of limitations in prolonged standing or walking as well as squatting and kneeling." *Id.*

3

On April 21, 2010, Plaintiff underwent a consultative examination at Orthopedic Associates. Tr. at 527. The report indicates that Plaintiff's provider was Gerald Rollins, M.D., but the report was electronically signed by Mary Jo McMeans.[2] Tr. at 527–29. The report indicates that Plaintiff was able to move around easily without a limp, and demonstrated minimal tenderness, no swelling or effusion, and only mild weakness in his left leg compared to his right. Tr. at 528. The provider assessed mild post traumatic arthritis in the left knee, status post lateral tibial plateau fracture, and stated that there was no need for further treatment. *Id.* The provider stated:

> I would not limit his activities unless the knee feels like it needs to limit the activities. He can do pretty much whatever the knee lets him do. As far as the activity level that he could be doing at work is concerned, I do believe that he has some permanent limitations that the fracture and the arthritis require. He should not be expected to squat or crawl on his hands and knees to any significant degree. He can do a flight or two of stairs but should not be doing that multiple times per shift. Ladders are also going to be somewhat difficult with the left knee. He should be able to do an 8 hour shift in a job that allows him to change positions with some standing and some walking. I have a questionnaire sent from Mr. McChesney that asked on an 8 hour day, 5 days a week can he engage in anything more than sedentary work and I feel like that he should be able to engage in more than sedentary work, certainly light duty work or even medium duty work but not heavy duty work.

Tr. at 528–29.

### b.     Pancreatitis and alcohol abuse

On September 3, 2007, Plaintiff was seen at the hospital for pancreatitis resulting from alcohol abuse. Tr. at 330–32. He was seen at the hospital again for pancreatitis on

---

[2] Plaintiff asserts that Ms. McMeans is not a physician [Entry #14 at 10], and the Commissioner concedes that it is not clear whether Ms. McMeans is a physician [Entry #17 at 14].

4

September 8, 2007. Tr. at 355. On October 8, 2007, Plaintiff went to the hospital complaining of severe abdominal pain for the prior three weeks. Tr. at 310. On October 29, 2007, Plaintiff reported at the hospital that he had been vomiting and drinking two pints of vodka per day. Tr. at 317. An abdominal scan performed that day showed calcification suggesting chronic pancreatitis. Tr. at 326. On December 18, 2007, a physician's assistant reported that Plaintiff was vomiting blood and had a history of alcohol abuse. Tr. at 338. Plaintiff was diagnosed with alcohol abuse, alcoholic pancreatitis, and a probable ulcer. Tr. at 338–40. On February 23, 2008, Plaintiff was treated in the emergency room for abdominal pain, nausea, and vomiting. Tr. at 364–68. An abdominal scan showed chronic calcific pancreatitis. Tr. at 307. Plaintiff returned to the hospital with nausea and abdominal pain on March 3, 2008. Tr. at 392.

On April 5, 2008, Plaintiff reported to the hospital with abdominal pain and vomiting after eating a meal that was high in fat and drinking two 40 ounce bottles of malt liquor. Tr. at 398. He was diagnosed with pancreatitis secondary to alcohol abuse and admitted for intravenous fluids. Tr. at 409. He was discharged on April 7, 2008. Tr. at 398. On July 31, 2008, Plaintiff was seen at the hospital with abdominal pain. Tr. at 465. A CT scan showed pancreatic changes and he was diagnosed with acute chronic pancreatitis. Tr. at 465, 483–84. On September 24, 2008, Plaintiff again presented at the hospital with abdominal pain. Tr. at 458.

Plaintiff was treated in the emergency room on April 20, 2009, for abdominal pain and vomiting. Tr. at 488. Plaintiff was in moderate distress and had recent heavy alcohol consumption. *Id.* Plaintiff received treatment and medications through St. Luke's free

medical clinic between June 2009 and March 2010 for pancreatitis, gastroesophageal reflux, high blood pressure, ulcers, and knee and leg complaints.  Tr. at 540–47.

c.    Mental health

On September 30, 2009, Plaintiff underwent a consultative examination with James K. Ruffing, Psy.D.  Tr. at 515.  Dr. Ruffing did not review any medical records. *Id.*  Plaintiff reported to Dr. Ruffing that he was able to care for his personal needs, went to the store himself, and carried on a romantic relationship with his neighbor and social relationships with his family.  Tr. at 517–18.  He stated that he participated in meal preparation and some household cleaning.  Tr. at 518.  Dr. Ruffing reported that Plaintiff was calm, alert, and cooperative, and demonstrated appropriate affect.  *Id.*  Plaintiff stated that he had no mental health treatment and denied symptoms of anxiety or depression or other emotional concerns.  *Id.*  Dr. Ruffing reported that Plaintiff was fully oriented, showed intact thought processes and no psychosis, was able to focus and concentrate, and demonstrated intact memory and reasoning.  Tr. at 519.  Dr. Ruffing administered a Wide Range Achievement Test-3 (WRAT-3), which showed that Plaintiff had a 3rd grade equivalency in reading.  *Id.*  The doctor indicated that test results were believed to be a valid and accurate representation of Plaintiff's reading capacity and were consistent with functional illiteracy.  *Id.*  Dr. Ruffing stated that Plaintiff would "have difficulty reading text such as newspaper articles, instruction manuals or inventory lists."  *Id.*

On August 31, 2010, Plaintiff saw Dr. Ruffing for an additional consultative examination.   Tr. at 530.  Plaintiff told Dr. Ruffing that he did not have any specific mental health concerns.  *Id.*  Dr. Ruffing reported that Plaintiff was alert and responsive;

6

reported no emotional distress, depression, or anxiety; and displayed appropriate affect. Tr. at 532. He reported that Plaintiff was oriented, demonstrated intact and logical thought processes, showed no psychosis, could focus and concentrate, and displayed intact memory. Tr. at 533. Plaintiff reported that he cared for his own personal needs, went to the store himself, attended church, maintained social family relationships, had phone conversations, and participated in meal preparation and household chores. *Id.* Dr. Ruffing noted that while his prior evaluation suggested Plaintiff was functionally illiterate, current testing indicated that his ability was consistent with a 5th or 6th grade equivalency in reading. Tr. at 531. Dr. Ruffing opined that, based on the Millon Clinical Multiaxial Inventory-III, Plaintiff was "likely experiencing a rather severe mental disorder," particularly personality dysfunction, major depressive disorder, generalized anxiety disorder, and possible bipolar disorder. Tr. at 534. He opined that Plaintiff had "little insight and awareness into what appears to be, according to test findings, at least a moderate level of pathology in his overall personality structure." *Id.* Dr. Ruffing stated, "Although he is usually able to function on a satisfactory basis, the test findings indicate that he may experience periods of marked emotional, cognitive, or behavioral dysfunction." *Id.* Dr. Ruffing opined that while Plaintiff had adequate reading ability, his mental conditions impaired his ability to attend, focus, and concentrate on a consistent basis; impaired his ability to manage the concentration, persistence, and pace required in a typical eight-hour workday; and impaired his ability to relate to others in an appropriate and healthy manner. Tr. at 537. Dr. Ruffing further opined that Plaintiff did not appear

to have the minimal cognitive stability necessary to manage his financial affairs if awarded benefits. *Id.*

    d.  State-agency physician opinions

   On March 10, 2008, state-agency consultant Dale Van Slooten opined that Plaintiff could lift up to 50 pounds occasionally and 25 pounds frequently, and sit, stand, and walk for six hours each in an eight-hour workday.  Tr. at 369–76.  He based these limitations on Plaintiff's history of alcohol abuse and chronic pancreatitis.  *Id.*  Dr. Van Slooten opined that Plaintiff should never climb ladders, ropes, or scaffolds; could do all other postural activities frequently; and should avoid concentrated exposure to hazards.  Tr. at 371, 373.  On July 9, 2008, state-agency consultant Hugh Clark gave the same opinion.  Tr. at 449–55.

   On March 11, 2008, state-agency consultant Lisa Varner, Ph.D., opined that Plaintiff did not have a severe mental impairment, having considered Listing 12.09 relating to substance addiction.   Tr. at 377.  Dr. Varner opined that Plaintiff had no limitations in activities of daily living ("ADLs"), social functioning, concentration, persistence, or pace, and had no episodes of decompensation.  Tr. at 387.  On June 18, 2008, state-agency consultant Robbie Ronin also opined that Plaintiff did not have a severe mental impairment, having considered Listing 12.09.  Tr. at 434.  Dr. Ronin noted the alleged reduction in alcohol abuse (Tr. at 442) and opined that Plaintiff had mild limitations in ADLs, but no limitation in social functioning, concentration, persistence, or pace, and had no episodes of decompensation.  Tr. at 444.

C.    The Administrative Proceedings

1.    The Hearing on October 5, 2009

At the first hearing, Plaintiff testified that he had attended school through tenth grade and had not earned his GED.  Tr. at 65.  He stated that he could read, write, and do arithmetic "a little bit."  *Id.*  Plaintiff stated that he lived with his brother, sister-in-law, and niece.  *Id.*  He testified that he had hurt his knee two years previously, had surgery and physical therapy, and could, as of the hearing date, stand for an hour or two before needing to sit.  Tr. at 68.  Plaintiff testified that he took Demerol for knee pain, which he got from a regional medical center.  Tr. at 75.  He stated that he could walk one block, had no problem sitting, and could probably lift fifty pounds.  Tr. at 69.  Plaintiff stated that he cleaned, swept, made his bed, and could cook for himself.  Tr. at 69–70.  He stated that he did dishes, folded laundry, ironed, took out the trash, and went to the convenience store.  Tr. at 75–76.  He testified that he was not supposed to use stairs, that his leg sometimes became numb, and that he used crutches once or twice a week when his leg was hurting badly.  Tr. at 70.  Plaintiff testified that his leg swelled once or twice a month for four to five hours.  Tr. at 71.  He stated that he had quit drinking liquor in January 2009 (*id.*), but in 2008 had been drinking two fifths of alcohol each week (Tr. at 74).  Plaintiff stated that he left the house twice weekly, went to his sisters' homes, and generally watched television all day.  Tr. at 72–73.

2.    The Hearing on February 15, 2011

a.    Plaintiff's Testimony

At the second hearing, Plaintiff testified that he still lived with his brother, sister-in-law, and niece.  Tr. at 43.  He stated that he could walk around the house and could walk half a mile to the store in ten to fifteen minutes.  Tr. at 47.  Plaintiff stated that he usually sat at home and watched television.  *Id.*  He testified that his doctor told him he should not play basketball.  Tr. at 49.  Plaintiff testified that his pancreatitis hurt sometimes at night or when he ate the wrong food.  Tr. at 49–50.  He stated that he last consumed alcohol three years previously in 2008.  Tr. at 50.  Plaintiff stated that there had been no change in his activities since the first hearing and that he still helped around the house, visited family, and went shopping.  Tr. at 53.  He testified that he went to St. Luke's or the emergency room for medicine and treatment.  Tr. at 50–52.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Benson Hecker reviewed the record and testified at the hearing.  Tr. at 54.  The VE categorized Plaintiff's PRW as a carpenter's helper as unskilled, very heavy work.  Tr. at 55.  The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work; occasionally push and pull with his left lower extremity; never climb ropes, ladders, and scaffolds; occasionally kneel and crawl; frequently balance, stoop, and crouch; and who must avoid concentrated exposure to hazards.  *Id.*  The VE testified that the hypothetical individual could not perform Plaintiff's PRW.  Tr. at 55–56.  The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform.  Tr. at

10

56.   The VE identified the jobs of hand packager, production helper, and warehouse worker.  *Id.*  The VE stated that if the hypothetical individual had daily absences from the work station, all work would be precluded.  *Id.*

        2.     The ALJ's Findings

In his decision dated March 18, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since November 7, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: recurrent alcoholic pancreatitis and post traumatic arthritis of the left knee, post status fracture of the tibial plateau (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  The claimant is able to lift up to 50 pounds occasionally and up to 25 pounds frequently.  The claimant is also able to stand, sit and walk up to six hours in an eight-hour workday.  The claimant is able to occasionally push and pull with his left lower extremity. The claimant is restricted from climbing ropes, ladders and scaffolds.  The claimant is able to occasionally climb stairs, kneel, and crawl and must avoid concentrated exposure to hazards.  He can frequently balance and stoop.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 8, 1958 and was 48 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 7, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 19–31.

D.    Appeals Council Review

On appeal, Plaintiff submitted a statement from Dr. Rollins dated March 9, 2011.

Tr. at 149–51. The statement, drafted by Plaintiff's counsel and executed by Dr. Rollins,

provides as follows:

> I recently saw Donald Wilkins back again to examine the current condition of his knees. I was asked to clarify my comments regarding his current limitations. Mr. Wilkins suffers from mild arthritis in his knees. His hardware is operating well. Given his mild knee arthritis, it would be reasonable for him to walk or stand for 4 hours most days and 6 hours on a good day. However, he would not be able to stand for 6 hours per day 5 days a week. If he attempted to stand or walk 6 hours per day or more any more than occasionally, then I would expect him to have significant discomfort in his knees. There is nothing more that I can do at this time to treat his knees.

Tr. at 151.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ failed to properly consider the opinions of consulting physicians Drs. Scott and Ruffing;

2)    the ALJ improperly found Plaintiff's mental impairments to be non-severe and failed to properly consider them in combination with his other impairments; and

3)    the Appeals Council failed to consider new and material evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to

impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b), Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the

---

prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the

court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

 B. Analysis

  1. New and Material Evidence

The undersigned first addresses Plaintiff's claim related to the alleged new and material evidence he submitted to the Appeals Council because it impacts the other issues he raises on appeal. Plaintiff contends that the Appeals Council committed reversible error by failing to consider Dr. Rollins's March 2011 opinion. [Entry #14 at 33–36]. Plaintiff asserts that the opinion was new and material. *Id.* Plaintiff further asserts that because the Appeals Council listed the additional evidence that it considered on appeal, and the list does not include Dr. Rollins's opinion, it is apparent that the Appeals Council did not consider the opinion at all. *Id.*

The opinion, drafted by Plaintiff's counsel and executed by Dr. Rollins, provides as follows:

> I recently saw Donald Wilkins back again to examine the current condition of his knees. I was asked to clarify my comments regarding his current limitations. Mr. Wilkins suffers from mild arthritis in his knees. His hardware is operating well. Given his mild knee arthritis, it would be reasonable for him to walk or stand for 4 hours most days and 6 hours on a good day. However, he would not be able to stand for 6 hours per day 5 days a week. If he attempted to stand or walk 6 hours per day or more any

more than occasionally, then I would expect him to have significant discomfort in his knees. There is nothing more that I can do at this time to treat his knees.

Tr. at 151.

The Commissioner has not responded to Plaintiff's argument regarding the Appeals Council's apparent failure to consider the opinion. Rather, the Commissioner contends that the ALJ's decision continues to be supported by substantial evidence because Dr. Rollins's opinion is not supported by the record and is inconsistent with the rest of the medical evidence. [Entry #17 at 21–22].[5]

The undersigned recommends remand based, in part, on the opinion of the Fourth Circuit Court of Appeals in *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011). In *Meyer*, the plaintiff submitted new evidence to the Appeals Council that was not considered by the ALJ, and the Appeals Council, even though it incorporated the new evidence in the record, denied the plaintiff's request for review. *Id.* at 703–04. The plaintiff filed an action with the district court for judicial review of the Commissioner's decision, and the district court found substantial evidence supported the Commissioner's decision to give a medical opinion minimal weight. *Id.* at 704. The Fourth Circuit, however, reversed the ruling of the district court. *Id.* at 707.

The Fourth Circuit found that after "consideration of the record as a whole, [it could not] determine whether substantial evidence support[ed] the [Commissioner's] denial of benefits." *Id.* The court reasoned as follows:

_____

[5] The undersigned notes that the Commissioner's citation to *Pace v. Astrue*, C/A No. 10-3256, 2012 WL 4478370 (D.S.C. Aug. 3, 2012), is inaccurate in that it does not stand for the proposition cited.

> [N]o fact finder has made any findings as to the treating physician's opinion or attempted to reconcile [the new] evidence with the conflicting and supporting evidence in the record.  Assessing the probative value of competing evidence is quintessentially the role of the fact finder.  We cannot undertake it in the first instance.

*Id.*

Some of the same considerations that caused the Fourth Circuit to remand *Meyer* are present here.  Like the claimant in *Meyer*, Plaintiff presented additional evidence to the Appeals Council, which is now in the record, that no fact finder has attempted to reconcile with conflicting and supporting evidence in the record.  Specifically, the additional evidence supports Plaintiff's allegations regarding his standing and walking limitations.   The opinion is also consistent with that of Dr. Scott, who opined that Plaintiff was limited to sedentary work.  Tr. at 513–14.

While Dr. Rollins was not a treating physician, making his opinion distinguishable from that in *Meyer*, there are additional considerations that weigh in favor of remand in this case.   Here, unlike in *Meyer*, it is unclear whether the Appeals Council even considered Dr. Rollins's opinion. On  the  list  of  exhibits  attached  to  the  Appeals Council's notice of action, only a letter from Plaintiff's counsel dated January 13, 2012, is listed. Tr. at 4–5.  In addition, the order of Appeals Council dated September 27, 2012, indicates that the letter from Plaintiff's counsel was the only additional evidence made a part of the record before the Appeals Council.  Tr. at 5.  Thus, it does not appear that the Appeals Council considered Dr. Rollins's opinion.

In addition, there is some confusion as to who authored the opinion from Orthopedic Associates dated April 21, 2010. Tr. at 527. The report indicates that Plaintiff's provider was Dr. Rollins, but the report was electronically signed by Mary Jo McMeans. Tr. at 527–29. The provider stated that he or she felt that Plaintiff would be able to engage in more than sedentary work, but not heavy duty work. Tr. at 528–29. The undersigned finds that it is necessary for a fact finder to reconcile Dr. Rollins's March 2011 opinion with the April 2010 opinion from Orthopedic Associates.

Based on the foregoing, the undersigned recommends remand of this case for consideration of Dr. Rollins's March 2011 opinion. The undersigned notes that an opinion of a consulting examiner that post-dates an ALJ's decision is not likely to warrant remand absent the extenuating circumstances presented here.

### 2.    Plaintiff's Remaining Arguments

Because the undersigned recommends that this case be remanded for evaluation of the additional evidence submitted to the Appeals Council, Plaintiff's remaining allegations of error are not specifically addressed. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error. Without fully evaluating Plaintiff's claim that his mental impairments are severe, the undersigned notes that the record does not appear to support such a finding. The undersigned further notes that the recommendations in this matter are in no way intended to suggest that the ALJ should award benefits on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law.  Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence.  Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

December 31, 2013                              Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).